IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AARON BECKMAN                               No. Civ. S-06-1205 RRB GGH

     Plaintiff,                         **Memorandum of Opinion**
  v.                                              **and Order**

UMPQUA BANK and DOES 1 through
20, inclusive,

     Defendants.        /

Aaron Beckman ("Beckman") filed an action against his former employer Umpqua Bank ("Umpqua") alleging that Umpqua failed to pay him for wages that he earned selling loans. Umpqua now moves for summary judgment on the ground that Beckman is not entitled to the relief his seeks because such compensation was an "incentive bonus" that Umpqua was contractually permitted to allocate at its discretion. For the reasons stated below, Umpqua's motion is **GRANTED.**[1]

---

[1] Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is

1

**I. BACKGROUND**

Beckman is a former Business Development Officer of Umpqua who specialized in the marketing and sale of Government Guaranteed Loans, such as Small Business Administration Loans. Pl.'s Separate Stmt. of Undisputed Facts ("UMF") ¶¶ 2-3, In Opp. to Def.'s Mtn. for Summary Judgment ("MSJ"). Beckman began working for Umpqua in mid-2004 when Umpqua merged with his then employer, Humboldt Bank. Pl.'s UMF ¶ 2.

In January 2005, Beckman and Umpqua entered into a new compensation plan whereby Beckman agreed to receive a salary plus an "incentive bonus." Pl.'s UMF ¶ 4. As part of this new compensation plan, Beckman agreed to the terms of Umpqua Bank's Incentive Plan ("Incentive Plan"),[2] which expressly superseded any prior compensation plans. Pl.'s UMF ¶ 4.

---

neither necessary nor warranted with regard to the instant matter. See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required). As a result, the oral argument presently scheduled for August 22, 2007, at 10:00 a.m., is hereby **VACATED**.

[2] The Incentive Plan is titled "Umpqua Bank Incentive Plan Terms & Conditions." Exh. 3, attached In Support of Def.'s MSJ. The stated purpose of the plan is to "drive and reward performance that ensures Umpqua Bank delivers outstanding customer service, products and financial results." Id. According to Umpqua, the plan "established an incentive schedule that compares favorably to industry standards and ensures the Bank's ability to attract and retain highly productive

Under the new Incentive Plan, Beckman was eligible to receive a quarterly "incentive bonus." Pl.'s UMF ¶ 5. His eligibility for this bonus, and the amount thereof, was based on a variety of factors and payable at the sole discretion of Umpqua's Incentive Plan Administrators. Pl.'s UMF ¶ 6; Exh. 3, attached In Support of Def.'s MSJ.[3] The Administrators of the Incentive Plan are: Umpqua's Chief Executive Officer, his executive designee, and the Senior Vice President of Human Resources. Pl.'s UMF ¶ 6; Exh. 3, attached In Support of Def.'s MSJ.

On August 18, 2005, Beckman resigned from Umpqua and joined a competitor, the day after Umpqua made an incentive payout for the second quarter of 2005. Pl.'s UMF ¶¶ 2, 11-12. Beckman

---

Employee's" by "recogniz[ing] and reward[ing] them based on production and pricing." Id.

[3]  The Incentive Plan, expressly states that: "[f]inal determination of goal attainment, including both individual and company performance, and approval of any payment awards made under the plan are subject to the discretion of the CEO, his executive designee and the SVP of Human Resources, the Administrators of the plan." Exh. 3, attached In Support of Def.'s MSJ. The Incentive Plan also states that: "[t]he Administrators have full power and authority to select participants from among those eligible, to determine the size and timing of individual awards, to terminate or modify any plan or payout amount, and to adopt and revise such rules and procedures as they deem necessary." Id. Finally, the Incentive Plan states that it: "can be amended, suspended or terminated at any time by the Administrators. Umpqua Bank reserves the right to modify, suspend, change the size of the award or terminate any incentive plan or an individual award at any time." Id.

purposely timed his resignation in this manner because he knew that, under the express terms of the Incentive Plan, employees were not eligible for an incentive payout if they were not employed on the day a payout was made, even if they had worked during the entire performance period. Pl.'s UMF ¶¶ 7, 10 & 12.[4]

In September 2005, Beckman contacted Umpqua and requested that it make an exception to the terms of the Incentive Plan by paying him an incentive bonus for loans that he worked on during his employment but that closed after his resignation. Pl.'s UMF ¶ 13. Umpqua declined Beckman's request. Pl.'s UMF ¶ 14. On April 5, 2006, Beckman filed the instant action alleging the following claims: (1) breach of California Labor Code §§ 201 and 203; (2) breach of contract; and (3) violation of California Business and Professions Code § 17200. Pl's UMF ¶ 15.

**II. DISCUSSION**

Umpqua argues that each and every claim alleged by Beckman fails as a matter of law because the compensation he seeks is an incentive bonus that was payable at its sole discretion. Beckman's claims are addressed individually below.

---

[4] The Incentive Plan expressly states that in order for an employee to be eligible for an incentive payout, he or she "must be employed by the Bank on the date of incentive payout, even if the associate was employed during the entire performance period . . ." Exh. 3, attached In Support of Def.'s MSJ.

**A.   Legal Standard**

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

**B.   Labor Code Violations**

Umpqua argues that this claim fails as a matter of law based on the plain language of the Incentive Plan.

"If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."  Cal. Lab. Code § 202(a).  "'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."  Cal. Lab. Code § 200(a).[5]

---

[5]   "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits,

Bonus incentive plans are considered wages within the meaning of Labor Code § 200. <u>Neisendorf v. Levi Strauss & Co.</u>, 143 Cal.App.4th 509, 522 (2006).[6] In California, "once a bonus has been promised as part of the compensation for service, and the employee fulfills all the agreed-to conditions, the promised bonus is considered wages that must be paid." <u>Id.</u> "California courts have consistently characterized bonus . . . plans as constituting an offer of the stated benefits in exchange for the service of an employee, and upon the employee's completion of the required services *in accordance with the terms of the plan,* a binding contract is formed under which the employer is obligated to deliver the promised benefits." <u>Neisendorf</u>, 143 Cal.App.4th at 523 (italics in original). Thus, Beckman's eligibility for a bonus payment is properly determined by the

---

the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203.

[6]   Under Labor Code § 200, wages are defined to include commissions. "'Commission wages are compensation paid to any person for services rendered in the sale of such employer's property or services and based proportionately upon the amount or value thereof.'" See <u>Ramirez v. Yosemite Water Co., Inc.</u>, 20 Cal.4th 785, 803 (1999) (quoting Cal. Lab. Code § 204.1). Although an employee's sales commissions are "wages," contractual terms must be met before an employee is entitled to a commission. <u>Steinhebel v. Los Angeles Times Communications</u>, 126 Cal. App. 4th 696, 705 (2005).

specific terms of the bonus plan and general contract principles.  Id.

Here, Beckman argues that he is entitled to a percentage of the loans he sold that closed after his resignation because such compensation constitutes unpaid wages.  Beckman argues that Umpqua purposefully characterized such compensation as a bonus, instead of a commission, in order to create a forfeiture of earned wages.  The court disagrees.

The undisputed evidence demonstrates that Beckman knew that the compensation plan offered by Umpqua superseded any prior compensation plans and that his eligibility for an incentive bonus under that plan was determined at the sole discretion of Umpqua's Administrators based on a variety of factors, including his performance, the financial performance of Umpqua and the general banking market.  Pl.'s UMF ¶¶ 4-7.  It is also undisputed that Beckman knew at the time he signed the Incentive Plan that he was only eligible for an incentive bonus for a given performance period if he was employed on the date of the bonus payout for that period.  Pl.'s UMF ¶¶ 7, 10.  Finally, it is undisputed that Umpqua has never paid an incentive bonus, in whole or part, to any individual that was not employed by Umpqua on the date of the bonus payout.  Pl.'s UMF ¶ 9.

Based on the foregoing, the court concludes that Beckman is not entitled to the compensation he seeks.  This is because

Beckman failed to complete all the agreed-to conditions, in accordance with the terms of the Incentive Plan, to make him eligible for an incentive bonus for loans closing after his resignation. Notably, Beckman was not employed on the date of the incentive payout for the third quarter. Therefore, pursuant to the plain terms of the Incentive Plan, Beckman was not eligible for an incentive bonus for loans closing during that period, i.e., loans closing after his resignation. See Lucian v. All States Trucking Co., 116 Cal.App.3d 972, 974-75 (1981) (granting summary judgment in favor of an employer against several employees who sought bonus payouts after voluntarily resigning before the end of the year, where a written employment plan provided for a bonus to be payable at the end of the year, but specified that employees who voluntarily left the company before the bonus determination date would not be entitled to the bonus).

    Accordingly, because Beckman is not entitled to the compensation he seeks, Umpqua did not fail to pay earned wages in violation of the Labor Code.

    With respect to Beckman's argument that he is entitled to the compensation he seeks because it is a commission, the court rejects this argument. The plain language of the Incentive Plan

states that incentive payouts are discretionary[7] and subject to adjustment based on a variety of factors, including an employee's performance, the financial performance of Umpqua and the general banking market. As such, Beckman's incentive payouts were not based proportionately upon the percentage of loans sold. Therefore, because Beckman was not entitled to a certain percentage of the loans he sold, the incentive payouts are not accurately characterized as a commission.[8] Moreover, even assuming the incentive payouts are characterized as a commission, Beckman is not entitled to the compensation he seeks because the terms of the Incentive Plan expressly condition an incentive payout on an employee being employed on the day of the incentive payout. See Steinhebel, 126 Cal.App.4th at 705 (noting that while an employee's sales commissions are "wages,"

---

[7] Indeed, the incentive payouts were determined by Umpqua's Administrators who were vested with the "full power and authority to select participants from among those eligible, to determine the size and timing of individual awards, to terminate or modify any plan or payout amount, and to adopt and revise such rules and procedures as they deem necessary." Exh. 3, attached In Support of Def.'s MSJ. Beckman acknowledges that the Administrators have exercised their discretion to adjust bonuses up or down or to completely withhold a bonus. Pl.'s UMF ¶ 8.

[8] There are two essential requirements for a compensation scheme to be deemed "commission wages": (1) the employee must be involved principally in selling a product or service, rather than making or providing the product or service; and (2) the amount of payment must be a percent of the price of the product or service. Wayne v. Staples, Inc., 135 Cal.App.4th 466, 478 (2006).

contractual terms must be met before an employee is entitled to a commission).

For these reasons, the motion is granted with respect to this claim.

**C.  Breach of Contract**

Umpqua argues that this claim fails as a matter of law because Beckman failed to demonstrate a breach of the Incentive Plan.

To state a cause of action for breach of contract, a plaintiff must plead the following elements: (1) the existence of a contract between the parties; (2) the plaintiff's performance or excuse for nonperformance; (3) the defendant's failure to perform (breach); and (4) resulting damages. <u>Careau & Co. v. Security Pacific Business Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1388 (1990).

Here, Beckman's breach of contract claim is premised on Umpqua's alleged failure to pay commissions for loans closing after his resignation. Because the unambiguous terms of the Incentive Plan require Beckman to be employed on the date of the incentive payout in order to be eligible for an incentive bonus, Umpqua did not breach the Incentive Plan as Beckman was not employed on the date of the bonus payout for the performance period in which the loans at issue closed.

For these reasons, the motion is granted with respect to this claim.

**D.   Business & Professions Code § 17200**

Umpqua argues that Beckman's § 17200 claim fails as a matter of law because there is no underlying unlawful act to support this claim.

Business and Professions Code § 17200 prohibits: any (1) unlawful, (2) unfair, or (3) fraudulent business practice or act.  See People ex rel. Bill Lockyer v. Fremont Life Ins. Co., 104 Cal.App.4th 508, 515 (2002). "With respect to the *unlawful* prong, '[v]irtually any state, federal or local law can serve as the predicate for an action' under section 17200." Id. (italics in original).  "[I]n essence, an action based on . . . section 17200 to redress an unlawful business practice borrows violations of other laws and treats these violations, when committed pursuant to a business activity, as unlawful practices independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder."  Id. (quotation marks omitted).

Here, because Beckman's § 17200 claim is premised on Umpqua's alleged failure to pay him earned wages in violation of substantive provisions of the Labor Code, it fails as a matter of law.   See Steinhebel, 126 Cal.App.4th at 712 (while an employer's policy or practice that violates the Labor Code may

11

also be held an "unlawful business practice" under § 17200 et seq., where an employer's policy is lawful and permissible, there is no basis for relief under the unfair competition law).

For this reason, the motion is granted with respect to this claim.

**III. CONCLUSION**

For the above stated reasons, the court grants summary judgment.

**IT IS SO ORDERED.**

ENTERED this 24th day of August, 2007.

                                        s/RALPH R. BEISTLINE
                                        United States District Judge